## HENDRICKSON vs. EXECUTORS OF NORCROSS.

1. A judgment of a court of law, rendered against parties before the court upon a matter within its jurisdiction, cannot be questioned collaterally in this court for any illegality or irregularity in entering it.

2. If one man is the owner of a parcel of land, and another owns the buildings which stand upon it, and the owner of the land takes a mortgage from the owner of the buildings, upon both the buildings and the land on which they stand, this does not amount to an agreement to sell or convey the lands to the mortgagor.

On motion to dissolve injunction.

*Mr. E. T. Green,* for motion.

*Mr. J. Parker,* contra.

THE CHANCELLOR.

Hugh Manahan, on the 20th of February, 1858, conveyed the premises in question to the complainant. The premises, situate at Long Branch, in Monmouth county, were then in possession of Abner H. Reed, and had been, since 1855. Reed held them under Manahan, and while in possession had

erected on them a hotel, known as the Monmouth House, and other buildings. Reed was indebted to Lanning & Dunn for materials, and to Poole, Slocum & Company for labor and materials in erecting these buildings. These creditors, in 1857, filed lien claims against Reed as builder, and Manahan as owner, and severally brought suits on these claims under the mechanics' lien law, in Monmouth Common Pleas. In these suits, both Reed and Manahan were duly served with process, and judgments were entered in them against both defendants—against Reed, generally, and against Manahan, specially—to be made of the buildings, and the lot on which they were situate, and described in the lien claim, which lot is the premises in question. The judgment of Lanning & Dunn was entered on the 4th day of May, 1857, and that of Poole, Slocum & Company on the 6th of October, 1857; both before the conveyance to Hendrickson. Executions were issued on both, and the property levied on before the conveyance from Manahan to Hendrickson. Under these executions, the sheriff of Monmouth afterwards, in 1860, sold and conveyed these buildings, and the lot on which they stood, to William W. Norcross. After this, in March, 1865, Norcross sold the buildings at public auction. By the conditions of sale, the purchaser was to remove the buildings from the premises by a certain day in May following, or lose his right to the buildings left. Hendrickson bid at this sale $3000, and the buildings were struck off to him for that sum. He acknowledged the purchase by writing endorsed on the conditions of sale. He paid $300 in cash, and gave Norcross a mortgage for the remaining $2700 on the lot and buildings.

After the death of Norcross, in 1866, the defendants, his executors, offered the lands on which the buildings stand for sale. The bill is filed to restrain this sale, and to compel the defendants to convey the lands to the complainant.

It is possible that the plaintiffs in the lien suits were not entitled to judgments against the land, or Manahan, but only against the buildings. There is nothing that appears which shows that they were, or that they were not, so entitled. But

Manahan was the sole owner of the soil at that time; he was duly served with process to appear in suits expressly brought to enforce the lien claims, not only against Reed and the buildings, but against the land. He allowed judgments to go against the land at a time when he owned it, and when the complainant had no interest in it. These judgments were entered upon the records of the Court of Common Pleas of the county, and executions were issued and levied on the land and buildings before Manahan conveyed to the complainant. He, therefore, bought subject to the judgments and to their legal effect, and neither he nor Manahan can now dispute, in this collateral manner, that the judgments were properly entered, or that the land was liable.

Norcross, in 1860, bought both the land and the buildings, and, in 1865, sold the buildings alone, to the complainant, with a provision expressed in the conditions of sale, that the buildings should be removed in two months. There is nothing in this, or in the fact of his taking a mortgage upon the buildings, and such title as complainant had in the lands, that amounts to an agreement to sell the lands. If the complainant has the right to remove these buildings, a sale of the title which Norcross might have had to the lands, will not take away that right. If Norcross got no title to the lands by the sale under the lien law, the defendants can convey none, and their paper proceedings will not injure him. The sale will create or put upon the title no cloud that is not there already, and none but such as a purchaser from the complainant ought fully to be apprised of before he accepts title from him.

For these reasons, and because the complainant has taken no proceedings in the suit since the 3d of August, 1867, more than a year and four months, the injunction must be dissolved, with costs.